UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VONN CAPEL and
BENJAMIN BLANCHARD,

       Plaintiffs,

v.                                 Case No. 8:24-cv-352-WFJ-CPT

PASCO COUNTY, PASCO COUNTY
PROPERTY APPRAISER OFFICE,
PASCO COUNTY TAX COLLECTOR
OFFICE, MIKE WELLS, in his official
and individual capacity, and MIKE
FASANO, in his official and individual
capacity,

       Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Before me on referral is Defendants Pasco County Tax Collector Office and

Pasco County Tax Collector Mike Fasano's (Tax Collector Defendants) *Renewed*

*Motion for Sanctions and Award of Attorney's Fees under Fed. R. Civ. P. 11* (Doc. 84), the

Tax Collector Defendants' *Renewed Motion to Determine Entitlement to Attorney's Fees (42*

*U.S.C. § 1988)* (Doc. 85), Defendants Pasco County Property Appraiser's Office and

Pasco County Property Appraiser Mike Wells's (Property Appraiser Defendants)

*Opposed Renewed Motion to Determine Entitlement to Attorney's Fees* (Doc. 86), and pro se

Plaintiffs Vonn Capel and Benjamin Blanchard's responses in opposition to the Defendants' motions (Docs. 87, 88). Also before me is the Tax Collector Defendants' and the Property Appraiser Defendants' respective motions to determine entitlement to appellate attorneys' fees pursuant to section 1988, and the Plaintiffs' responses in opposition to those requests for relief. (Doc. 81). For the reasons set forth below, I respectfully recommend that the Defendants' motions (Docs. 81, 84–86) be granted.

I.

The Plaintiffs initiated this suit in February 2024 by filing a ninety-two-page complaint (excluding exhibits) against the Tax Collector Defendants and the Property Appraiser Defendants. (Doc. 1). The gist of the Plaintiffs' complaint was that the Defendants could not impose an ad valorem tax on the Plaintiffs' "homestead" property which was located in Pasco County, Florida. *Id.*; (Doc. 24). Acting on its own accord, the Court dismissed the Plaintiffs' complaint as groundless via a paperless "Endorsed Order" but allowed the Plaintiffs an opportunity to revise their pleading.[1]

*Id.* The Court, however, warned the Plaintiffs:

> The gravamen of the [Plaintiffs'] complaint . . . that Pasco County may not tax homestead real property . . . is a frivolous contention and without legal merit. If Plaintiffs wish to replead the complaint, any amended complaint must not be based upon that contention. Although expensive sometimes and annoying always, real property tax is legal and

---

[1] As part of its ruling, the Court terminated several motions to dismiss which the Defendants filed prior to the Court's Order. *See* (Docs. 14, 15, 17, 24).

constitutional.  If an amended complaint is not on file within [fourteen] days, the matter will be closed.

*Id.*

The Plaintiffs amended their complaint in March 2024, but they did not heed the Court's directive.  (Doc. 26).  Instead, the Plaintiffs again averred that the Defendants improperly assessed ad valorem property taxes without "the required constitutional situs and income return."  *Id.* at 4.  Predicated on these and other allegations, the Plaintiffs asserted federal claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth Amendment's proscription against unlawful seizures, the Fifth Amendment's takings clause, the Fourteenth Amendment's due process clause, and the Ninth Amendment's savings clause.  *Id.*  The Plaintiffs also brought state law claims for negligence, "fraud under color of law," a "conspiracy against rights," and intentional infliction of emotional distress.  *Id.*  For relief, the Plaintiffs sought nearly $4 million in compensatory and treble damages and $190,000,000 in punitive damages.  *Id.*  In addition, the Plaintiffs asked that the Court issue an injunction preventing the Defendants from enforcing taxation policies related to their property and from assessing all Pasco County property "as [t]axable without an income return filed and demonstrating assessable situs per Constitutional requirements[.]"  *Id.*

In April 2024, the Defendants moved to dismiss the Plaintiffs' amended complaint (Docs. 30–32), which the Plaintiffs opposed (Docs. 36–38).  While the Defendants' motions were pending, the Plaintiffs moved for jurisdictional discovery. (Doc. 41).

In August 2024, the Court granted the Defendants' motions and dismissed the Plaintiffs' amended complaint on two separate grounds. (Doc. 61). First, the Court determined that it lacked subject matter jurisdiction over the action under the Tax Injunction Act (TIA), which prohibits district courts from "enjoin[ing], suspend[ing], or restrain[ing] the assessment, levy[,] or collection of any tax under State law where a plain, speedy[,] and efficient remedy may be had in the courts of such State," 28 U.S.C. § 1341. *Id.*[2] Second, the Court reiterated that all of the Plaintiffs' claims were "frivolous" and therefore subject to dismissal with prejudice. *Id.* at 7. In support of the latter ruling, the Court stated:

> Beyond the bar imposed by the [TIA], the [Plaintiffs' amended complaint] is dismissed because it is simply frivolous . . . and ha[s] no merit in fact or law. . . . The theories concocted by the [Plaintiffs] make no sense, and cannot be divined to compose a legal theory that comes near to stating a claim. The [amended complaint] is not subject to remediation or cure and any . . . [further] amended complaint would be futile. Although a dismissal for lack of subject matter jurisdiction under the [TIA] would have to be without prejudice, all of these claims are entirely frivolous on their merit and substance. Thus, they are dismissed with prejudice.

*Id.* (internal citations omitted). Along with dismissing the Plaintiffs' amended complaint, the Court also denied the Plaintiffs' motion for jurisdictional discovery. (Docs. 59, 60).

---

[2] Of note, the Defendants raised the TIA jurisdictional issue in their initial motions to dismiss. (Docs. 14, 15, 17).

Shortly after the Court's August 2024 decision, both the Tax Collector Defendants and the Property Appraiser Defendants moved for attorneys' fees under section 1988, and the Tax Collector Defendants additionally moved for sanctions pursuant to Rule 11. (Docs. 63–66). That same month, the Plaintiffs appealed the Court's August 2024 dismissal Order to the Eleventh Circuit. (Doc. 72). In light of the Plaintiffs' appeal, the Court denied the Defendants' fee and sanctions motions without prejudice. (Docs. 75–78).

In May 2025, the Eleventh Circuit upheld the Court's August 2024 Order with one minor caveat. (Doc. 80). In particular, the Eleventh Circuit concluded that the Court did not err in dismissing the Plaintiffs' amended complaint for lack of subject matter jurisdiction given the dictates of the TIA. *See id.*; *see also* 28 U.S.C. § 1341. In reaching this conclusion, the Eleventh Circuit noted that "the TIA bars the exercise of federal jurisdiction if (1) the relief requested by the plaintiff will enjoin, suspend, or restrain a state tax assessment and (2) the state affords the plaintiff a plain, speedy, and efficient remedy." (Doc. 80 at 3) (internal quotation marks and citation omitted). Regarding the first prong, the Eleventh Circuit found that the Plaintiffs' request for injunctive relief "*plainly* asked the district court to 'enjoin, suspend or restrain' Florida's tax assessment, which is precisely what the TIA prohibits." *Id.* at 4 (emphasis added) (citation omitted). As for the second prong, the Eleventh Circuit determined that the Plaintiffs "did not allege sufficient facts to show Florida law offer[red] inadequate remedies to challenge the allegedly improper assessment." *Id.* at 5 (citation omitted). In fact, the Eleventh Circuit pointed out that "Florida law

provide[d] 'plain, adequate, and complete state remedies'" relative to tax challenges. *Id*. (quoting *Turner v. Jordan*, 117 F.4th 1289, 1294, 1306 (11th Cir. 2024)).

Although the Eleventh Circuit resolved the jurisdictional question under the TIA, it declined to reach the frivolity issue, explaining that "because the [district] court determined it had no subject-matter jurisdiction over the [Plaintiffs'] amended complaint, it also lacked jurisdiction to enter a merits judgment." *Id*. at 8. As a result, the Eleventh Circuit stated that "the dismissal should have been without prejudice." *Id*. at 7 (citations omitted). In accordance with this finding, the Eleventh Circuit revised this Court's August 2024 dismissal Order "by substituting the words 'without prejudice,' for the words 'with prejudice,' and affirm[ed] th[is Court's] judgment . . . as modified." *Id*. (internal quotation marks and citation omitted)

With respect to the Plaintiffs' motion for jurisdictional discovery, the Eleventh Circuit upheld this Court's denial of that request as well, noting that "jurisdiction was not genuinely in dispute." *Id*. It then went on to emphasize that "[i]t was *clear* the [Plaintiffs'] lawsuit implicated the TIA because (1) the amended complaint *plainly* requested the district court to enjoin assessment and collection of state taxes, and (2) Florida offer[red] comprehensive remedies to those challenging tax assessments." *Id*. (emphasis added) (citation omitted).

Following the issuance of the Eleventh Circuit's decision, the Plaintiffs petitioned for rehearing and rehearing en banc. *Blanchard v. Pasco Cnty.*, No. 24-12793, at (Doc. 54) (11th Cir. June 1, 2025). That petition was denied. *Id*. at (Doc. 59). The Eleventh Circuit did, however, stay the entry of its mandate to permit the Tax

Collector Defendants to file a motion for appellate fees, *id.* at (Doc. 66), which the Eleventh subsequently transferred to this Court for its consideration. (Doc. 81).

Upon remand to this Court, the Defendants renewed their motions for trial fees and for sanctions, the latter of which was identical to the original motion. (Docs. 84–86); *see also* (Doc. 89 at 3–4). Having carefully reviewed these submissions, as well as the Plaintiffs' responses in opposition (Docs. 87, 88), I find them to be ripe for disposition.

## II.

### A.

I commence my analysis with the Defendants' section 1988 motions for fees incurred before this Court. (Docs. 85, 86). Firmly entrenched in our legal system is the dictum that each party "bear[s its] own litigation expenses, including attorney[s'] fees, regardless [of] whether [it] wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). As the Supreme Court observed last year:

> Since 1796, this Court has maintained that the Judiciary itself would not create a general rule, independent of any statute, allowing awards of attorneys' fees in federal courts. The principle that the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser became known as the "American Rule."

*Lackey v. Stinnie*, 604 U.S. 192, 199 (2025) (internal quotation marks and citations omitted).

The American Rule admits of a number of exceptions, however, including—as pertinent here—where a statute authorizes fees to be shifted from one party to another.

*Fox*, 563 U.S. at 832.  One such statute—as both the Plaintiffs and the Defendants acknowledge in their respective filings—is section 1988, which permits a court to award a "reasonable attorney[s'] fee" to the "prevailing party" in an action to enforce section 1983, among other provisions.  42 U.S.C. § 1988(b).[3]

In deciding whether a litigant is a prevailing party under section 1988, the Supreme Court has instructed courts to employ a "common sense" approach.  *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016).  Consistent with this approach, the Court has recognized that the prevailing party determination is not the same for plaintiffs and defendants because they aim to achieve disparate outcomes.  *Id.* at 432.  As the Court explained in *CRST*:

> Plaintiffs and defendants come to court with different objectives.  A plaintiff seeks a material alteration in the legal relationship between the parties.  A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor.  The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations.  The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.  *The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.*

*Id.* (emphasis added); *see also Lackey*, 604 U.S. at 204 n.* (confirming that "a defendant need not obtain a favorable judgment on the merits to prevail").

---

[3] Section 1988(b) states, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"  42 U.S.C. § 1988(b).  For ease of reference, I will refer to this statute simply as section 1988.

Given the distinction the Supreme Court has drawn between plaintiffs and defendants in the context of section 1988 fee motions, a defendant will be deemed to be a prevailing party under that statute if it stymied a plaintiff's attempts "to effect a material alternation in the legal relationship between the parties." *Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1293 (11th Cir. 2021) (citation omitted). The only question that the Court has yet to decide is whether a defendant must secure a "preclusive judgment" to recover fees under section 1988. *See CRST*, 578 U.S. at 434 (declining to address this issue because it was not properly raised); *see also Lacke*y, 604 U.S. at 204 n.* (acknowledging that the Court has not resolved this issue).

Against this backdrop, I find that the Defendants are the prevailing parties for purposes of section 1988 here. The Eleventh Circuit's recent decision in *Provitola v. Comer*, 2025 WL 2779939 (11th Cir. Sept. 30, 2025) (per curiam)[4] is instructive in this regard. In that case, the plaintiff filed suit against his neighbor and his neighbor's lawyer seeking to challenge the purported "'corruption' of various state court trial and appellate judges who 'illegally' ruled against him" in a previous state court action. *Id.* at *2. To remedy the harms he allegedly suffered, the plaintiff requested, inter alia, declaratory and injunctive relief "void[ing]" "all of the unconstitutional actions" of the state courts. *Id.*

The district court dismissed the plaintiff's complaint without prejudice as a shotgun pleading, which led the plaintiff to file an amended complaint. *Provitola v.*

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Comer*, 2024 WL 1479557, at *1 (11th Cir. Apr. 5, 2024) (per curiam).  The district court dismissed that revised pleading as well, this time with prejudice, finding that it was deficient in two respects.  *Id*.  The district court concluded as an initial matter that the plaintiff's amended complaint was barred under the *Rooker-Feldman* doctrine, which divests federal courts of subject-matter jurisdiction over suits to nullify an injurious state-court judgment.  *See id.* at *2 n.2*; see also Provitola v. Comer*, 2022 WL 823582, at *2 (11th Cir. Mar. 18, 2022) (per curiam).  The district court also found that the plaintiff's amended complaint failed to state a claim upon which relief could be granted.  *Provitola*, 2024 WL 1479557, at *1.  On appeal, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's amended complaint for lack of subject-matter jurisdiction but remanded the case for the limited purpose of correcting the judgment to reflect that the dismissal was without prejudice.  *Id*.

Before the district court could implement this change on remand, however, the plaintiff filed a second amended complaint, which the district court ultimately dismissed as well.  *Id*.  The Eleventh Circuit affirmed that ruling too.  *Id*.

The defendants then filed section 1988 motions for fees incurred at both the trial court and appellate levels.  *Provitola*, 2025 WL 2779939, at *1 & n.1.  After the Eleventh Circuit transferred the appellate fee request to the district court for its consideration, the district court granted both fee motions.  *Id*.

On appeal, the Eleventh Circuit affirmed the district court's fee rulings.  *Id*. at *2.  Echoing the Supreme Court's guidance in *CRST*, the Eleventh Circuit noted at the

outset that a defendant may be a prevailing party under section 1988 "even if the case is dismissed *without prejudice* for lack of jurisdiction . . . if the defendant obtains a judgment placing 'judicial imprimatur' on his view of the parties' legal relationship." *Id*. at *1 (emphasis added) (quoting *CRST*, 578 U.S. at 422, 432). The court then went on to find that the defendants met this standard, stating:

> Here, [the defendants] successfully rebuffed [the plaintiff's] efforts to materially alter the parties' legal relationship. [The plaintiff] came into court seeking declaratory and injunctive relief, but left with nothing but disappointment: the district court dismissed all of his claims, and we affirmed. Even though [the defendants] won on jurisdictional grounds, they are still "prevailing part[ies]" under [section] 1988[ ].

*Id*. at *1.

While *Provitola* is an unpublished decision, I find it persuasive. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022). Not only is it well-reasoned, it also aligns with the Supreme Court's opinion in *CRST*, where—as referenced above—the Court ruled that defendants can be prevailing parties as a result of non-merits-based decisions and, in doing so, cited an example where a defendant succeeded on jurisdictional grounds. *See CRST*, 578 U.S. at 432–34 (citing *C.W. Capistrano Unified School Dist.*, 784 F.3d 1237, 1247–48 (9th Cir. 2015)). The *Provitola* decision additionally coheres with opinions issued by several Circuit Courts of Appeal. *See, e.g., Garmong v. Cnty. of Lyon*, 807 F. App'x 636, 639 (9th Cir. 2020) (per curiam) ("[T]he district court had jurisdiction to award attorney's fees under . . . [section 1988] even though it dismissed [the plaintiff's] case for lack of subject-matter jurisdiction.") (citing *CRST*, 578 U.S. at 421); *Werch v. City of Berlin*, 673 F.2d 192, 194 (7th Cir. 1982)

(affirming the district court's finding that the defendant was the prevailing party and thus entitled to fees in a section 1983 action where the case was dismissed without prejudice due to the lack of subject matter jurisdiction under the TIA); *Hutcherson v. Bd. of Superiors of Franklin Cnty.*, 742 F.2d 142, 144–46 (4th Cir. 1984) (upholding a section 1988 fee award to a defendant who prevailed by securing a dismissal under the TIA).

Buttressed by this case authority, *Provitola* strongly supports the conclusion that the Tax Collector Defendants and the Property Appraiser Defendants are deserving of their trial court fees under section 1988 here.  Akin to the situation in *Provitola*, the Tax Collector Defendants and the Property Appraiser Defendants defeated the Plaintiffs' attempts to "materially alter the parties' legal relationship" and, in the process, "left [the Plaintiffs] with nothing but disappointment."  *Provitola*, 2025 WL 2779939, at *1.

In an effort to avoid this outcome, the Plaintiffs point to cases which stand for the proposition that a dismissal for lack of subject matter jurisdiction "is not a judgment on the merits and is entered without prejudice," (Doc. 87 at 5) (quoting *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232, 1235 (11th Cir. 2008) (per curiam)); (Doc. 88 at 6–7) (same), and that such a dismissal therefore does not alter the parties' legal relationship given that a plaintiff can refile his claims, (Doc. 87 at 5) (citing *Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003)); (Doc. 88 at 7) (same). The Plaintiffs also point out that they have re-filed their suit in state court.  (Doc. 88).

To the extent the Plaintiffs suggest that a merits determination is required to be a prevailing party, this contention has been flatly rejected by the Supreme Court and

12

the Eleventh Circuit. *See Lackey*, 604 U.S. at 204 n.\*; *CRST*, 578 U.S. at 431–32; *Provitola*, 2025 WL 2779939, at \*1 & n.2; *Beach Blitz*, 13 F.4th at 1298. And, for the reasons discussed above, I find that *Provitola* supports the conclusion that the Defendants prevailed by obtaining a dismissal without prejudice on jurisdictional grounds. *Provitola*, 2025 WL 2779939, at \*1.

The fact that Tax Collector Defendants and the Property Appraiser Defendants are prevailing parties does not end the inquiry, however. Although "[a] prevailing plaintiff is virtually always entitled to attorney's fees, 'unless special circumstances would render such an award unjust,'" *Club Madonna, Inc. v. City of Miami Beach*, 2023 WL 3534077, \*4 (S.D. Fla. May 18, 2023) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)), a prevailing defendant is subject to a more stringent standard given the "different equitable considerations" involved, *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,* 434 U.S. 412, 419 (1978); *see also Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (per curiam) (same); *Boler v. Space Gateway Support Co. LLC*, 290 F. Supp. 2d 1272, 1279 (M.D. Fla. 2003) (same). Under this more rigorous framework, a court may award fees to a prevailing defendant only where it "find[s] that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or where the plaintiff continued to litigate the case after it "clearly became" frivolous, unreasonable, or without foundation. *Christiansburg,* 434 U.S. at 421–22; *see also Sullivan v. School Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985) (noting that the frivolity finding

turns on whether a claim is "so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful") (citation omitted).

The determination as to whether a plaintiff's lawsuit was frivolous, unreasonable, or without foundation involves a case-by-case analysis. *Head*, 62 F.3d at 355 (citing *Sullivan*, 773 F.2d at 1188–90). In undertaking this analysis, a court must "view the evidence in the light most favorable to the *non*-prevailing plaintiff." *Beach Blitz Co.*, 13 F.4th at 1297 (internal quotation marks and citation omitted). The factors "important" to this assessment include the following so-called "*Sullivan*" factors: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan*, 773 F.2d at 1189 (citations omitted).[5]

Additionally, in section 1983 actions like this one, the Eleventh Circuit "recognize[s] a fourth consideration"—namely, "whether there was enough support for the claim to warrant close attention by the court." *Beach Blitz*, 13 F.4th at 1302; *see also Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) (per curiam) ("Our circuit has held that [a] plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and

---

[5] Curiously, neither side addresses the *Sullivan* factors in their briefs.

review.") (citation omitted).  The Eleventh Circuit has characterized this fourth factor as "a particularly important one."  *Beach Blitz*, 13 F.4th at 1302.

In the end, although the above factors are helpful, they "are general guidelines only, not hard and fast rules."  *Sullivan*, 773 F.2d at 1189 (referencing the three *Sullivan* factors).  Indeed, "[r]igid application" of these factors "would lead to a result that Congress did not intend—that any defendant who prevailed on a dispositive motion would be entitled to fees."  *Boler*, 290 F. Supp. 2d at 1280.

Applying these principles here, I find that the Plaintiffs' claims were "so lacking in arguable merit as to be groundless or without foundation[.]"  *Sullivan*, 773 F.2d at 1188 (internal quotation marks and citation omitted).  Beginning with the first *Sullivan* factor—i.e., whether the Plaintiffs established a prima facie case—the Court dismissed the Plaintiffs' initial complaint in a paperless Order soon after it was filed because it was "frivolous . . . and without legal merit."  (Doc. 24).  The Court likewise disposed of the Plaintiffs' amended complaint in short order, finding that it was barred by the TIA and that it was also again predicated on "concocted" theories that "ma[d]e no sense" and did not "come[ ] near to stating a claim."  (Doc. 61 at 7).

The Plaintiffs' attempts to undermine the Court's prior rulings are wholly unconvincing.  While not entirely clear, it appears that many, if not all, of the arguments the Plaintiffs now posit are recycled versions of the contentions they previously advanced and the Court resoundingly renounced.[6]  (Docs. 36–38).

---

[6] The Plaintiffs seemingly contend, for example, that a "takings" occurred for which they maintained a constitutional right to seek compensation (Doc. 88 at 8–9) (citing *Knick v. Twp. of Scott*, 588 U.S. 180

Furthermore, the Plaintiffs still fail to provide persuasive case authority bolstering their central theory—which undergirds all their counts—that a county cannot legally assess and collect ad valorem taxes and that the TIA does not preclude the Plaintiffs' sought-after relief.  Even a liberal construction of the Plaintiffs' amended complaint does not reveal how the precedent they cite buttresses their federal constitutional and state law claims challenging the county's taxation of their properties.  In sum, the Plaintiffs did not establish a prima facie case in this action, and the first *Sullivan* factor accordingly supports a frivolity finding.

The second *Sullivan* factor—i.e., whether the Defendants offered to settle the lawsuit, *Sullivan*, 773 F.2d at 1189—is neutral.  This is because there is no indication in the record as to whether the Defendants made a settlement proposal or attended mediation.  *See Hybrid Pharma LLC v. Knispel*, 2025 WL 1047108, at *3 (S.D. Fla. Feb. 25, 2025) ("In the absence of information about a settlement offer, [the second *Sullivan* factor] is neutral."), *report and recommendation adopted*, 2025 WL 909189 (S.D. Fla. Mar. 26, 2025).

The third *Sullivan* factor—i.e., whether the Court dismissed the case prior to trial or held a trial on the merits, *Sullivan*, 773 F.2d at 1189—clearly counsels in favor of a frivolity finding as well.  As described above, the Plaintiffs' claims were meritless

---

(2019) and *Lynch v. Household Fin. Corp.*, 405 U.S. 538 (1978)), and that they had a right to pursue information regarding the tax assessment at issue, *id.* (citing *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015), *CSX Transp., Inc. v. Ga. State Bd. of Equalization*, 552 U.S. 9 (2007), and *Hibbs v. Winn*, 542 U.S. 88 (2004)).

from the start—as the Court presaged in its first dismissal order—and never made it past the pleading stage. (Docs. 24, 61).

The fourth consideration—i.e., whether the case required careful attention and review—likewise militates in favor of a frivolity finding. Relevant to this analysis is whether the Court was "required to grapple with a novel area of law" or whether there was "any case law supporting the [Plaintiffs'] claims." *Beach Blitz*, 13 F.4th at 1303 (citations omitted). Also pertinent to this factor is whether the case "necessitated nuanced interpretations" of the law as applied to the facts. *Cross v. Johnson*, 2024 WL 4544176, at *4 (S.D. Fla. Oct. 4, 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 4542439 (S.D. Fla. Oct. 21, 2024); *see also Hybrid Pharma LLC*, 2025 WL 1047108, at *4 (evaluating under this factor whether a "close scrutiny of a great deal of caselaw" was required to determine if the plaintiff "could make out a claim").

Here, again, the Court dismissed the Plaintiffs' initial complaint without any hesitation because it was so plainly frivolous. (Doc. 24). Although the Court's August 2024 Order rejecting the Plaintiffs' amended complaint contained more of an analysis (Doc. 61), the Court was not called upon in that Order to "grapple with a novel area of the law," *Beach Blitz*, 13 F.4th at 1303, render any "nuanced interpretations" of the governing case authority, *Cross*, 2024 WL 4544176, at *4, or engage in a "close scrutiny" of a wealth of judicial opinions, *Hybrid Pharma LLC*, 2025 WL 1047108, at *4. Quite the contrary, the Court expediently dismissed all the Plaintiffs' claims as barred by the TIA and as otherwise baseless. (Docs. 24, 61).

The Plaintiffs' counterargument that a section 1988 fee award would be inappropriate in this case because they are proceeding pro se falls flat. Although it is true that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims," *Hughes v. Rowe*, 449 U.S. 5, 15 (1980), this admonition has no application here. As detailed previously, the Plaintiffs continued to press their specious legal theories even after they were explicitly cautioned by the Court at the outset that their claims were "frivolous" and "without legal merit." (Doc. 24). The Plaintiffs were also made aware within a month of filing their suit of the TIA jurisdictional issue because—as noted above—it was raised by the Defendants in their first set of dismissal motions. (Docs. 14, 15, 17). Had the Plaintiffs taken to heart these early warnings that their case was doomed, they may very well have avoided the potential imposition of a fee award against them. But they did not. Instead, they filed an amended complaint grounded upon the same "concocted" theories that the Court had already deemed to be frivolous and that they should have known were also jurisdictionally infirm. *See* (Doc. 80 at 7) (finding it "clear" on appeal that the Plaintiffs' lawsuit implicated the TIA because, among other things, the Plaintiffs' amended complaint "plainly" sought the type of injunctive relief which the TIA "precisely" prohibited); *see also E.E.O.C. v. Pet Inc., Funsten Nut Div.*, 719 F.2d 383, 384 (11th Cir. 1983) ("In determining whether attorneys' fees should be awarded to a prevailing defendant, the inquiry prescribed by the Supreme Court requires . . . [a c]ourt to find whether a plaintiff's claim 'was frivolous, unreasonable, or groundless, *or that the plaintiff continued to litigate after it clearly became so*.'") (quoting *Christiansburg*,

434 U.S. at 422) (emphasis added); *Johnson v. Kats-Kagan*, 2007 WL 9761614, at *1

(N.D. Fla. Sept. 7, 2007) ("A fee award to the defendant under [section] 1988[ ] is . . .

proper when the plaintiff continues to litigate after it becomes clear that her case is

frivolous, unreasonable, or groundless.") (citation omitted); *Brooks v. City of Clearwater*,

2025 WL 2899736, at *2 (M.D. Fla. Aug. 13, 2025) ("After the order denying the

motion to dismiss and during discovery, each of [the plaintiff's] claims against [a

defendant] 'clearly became' frivolous.") (citation omitted).[7]

## B.

Turning to the Defendants' section 1988 motion for appellate fees (Doc. 81),

the standards governing such fee requests are the same as those described above, *see*

*Young v. New Process Steel, LP*, 419 F.3d 1201, 1206 (11th Cir. 2005) ("The *Christiansburg*

rule applies not only to trials in civil rights cases, but also to appeals by plaintiffs in

them."). Thus, appellate attorneys' fees can only be awarded upon a finding that the

fee movant was a prevailing party and that the appeal was frivolous. *Id.*

The Plaintiffs' main contention on appeal was that they were "non-taxpayers"

and that their claims were accordingly not barred by the TIA. *See Blanchard v. Pasco*

*County*, No. 24-12793, at (Doc. 9) (11th Cir. Sept. 24, 2024). As reflected above,

however, the Eleventh Circuit gave short shrift to this argument, finding that "the

---

[7] The parties raise a separate issue pertaining to Defendant Pasco County Tax Collector Office. In
their fee motion, the Tax Collector Defendants assert in a footnote that the Pasco County Tax
Collector Office is not a legal entity subject to suit. (Doc. 84 at 1 n.1). The Plaintiffs counter in their
response that if this is true, the Pasco County Tax Collector Office should not be seeking fees. (Doc.
88 at 8). This issue, however, does not go to the merits of the Tax Collector Defendants' fee request
and therefore need not be decided here.

application of the TIA d[id] not turn on an individual's status as a 'taxpayer'" under the TIA's two-pronged analysis.  (Doc. 80 at 3).  As to the first prong and as discussed previously, the Eleventh Circuit explained that the Plaintiff's requested relief "*plainly* asked the district court to enjoin, suspend or restrain Florida's tax assessment, which is precisely what the TIA prohibits."  *Id*. at 4 (emphasis added) (internal quotation marks and citation omitted).  With respect to the TIA's second prong, the court stated:

> Capel is *plainly* a taxpayer under Florida law because her name is on the recorded warranty deed and the property was assessed in her name. While it is less clear whether Blanchard is a "taxpayer," he could still pursue the state remedies with Capel's written permission or if he were responsible for the tax payment.

*Id*. at 5–6 (emphasis added) (internal citations omitted).   The Eleventh Circuit therefore had little trouble in concluding—as referenced earlier—that the Plaintiffs' amended complaint was foreclosed by the TIA.  *Id.* at 8.  Given this conclusion and the contours of the frivolity standard discussed earlier, I find that the Defendants are entitled to appellate fees.

## C.

I now turn to the Tax Collector Defendants' motion for sanctions pursuant to Rule 11.  (Doc. 84).[8]  The specific sanctions the Tax Collector Defendants seek are

---

[8] The Property Appraiser Defendants filed a sanctions motion in the Eleventh Circuit pursuant to Federal Rule of Appellate Procedure 38 on the basis that the Plaintiffs' appeal was frivolous.  *See Blanchard*, No. 24-12793, at (Doc. 26) (11th Cir. Nov. 15, 2024); Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").  The Eleventh Circuit denied that motion as untimely, however, as it was filed after the deadline.  *See Blanchard*, No. 24-12793, at (Docs. 25, 26, 47-1); *see also* 11th Cir. R. 38-1.

"the reasonable attorney's fees and other expenses directly resulting from [the] Plaintiffs' unwarranted and frivolous filing of the[ir a]mended [c]omplaint." *Id.* at 2. To the extent the Court awards the Tax Collector Defendants attorneys' fees under section 1988, it need not also rule on their sanctions motion. As the Court may nonetheless deem it appropriate to grant relief under Rule 11 as well, I address that matter here.

Rule 11 authorizes a court to award sanctions "when a party files a pleading or motion that '(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose.'" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941–42 (11th Cir. 2022) (quoting *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021)). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (citation omitted); *see also Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) ("The goal of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.") (internal quotation marks and citation omitted); Fed. R. Civ. P. 11 advisory committee notes to 1993 amendment (noting that "the purpose of Rule 11 sanctions is to deter").

A court presented with a Rule 11 sanctions motion must engage in a two-step inquiry. A court must first determine whether the claims in question were "objectively frivolous" and, if so, it must then assess whether "the person who signed the pleadings

should have been aware that they were frivolous." *Gulisano*, 34 F.4th at 942 (quoting

*Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).  A factual claim is frivolous if

it had "no reasonable factual basis." *Id*.  A legal claim is frivolous if it had "no

reasonable chance of succeeding." *Id*.  Of significance here, the standards governing

Rule 11 sanctions are the "same for unrepresented parties, who are obliged themselves

to sign the pleadings." *Harris v. Gualtieri*, 2025 WL 3492806, at *2 (M.D. Fla. Dec. 5,

2025) (citing Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment).  That

said, a court can exercise its discretion "to take account of the special circumstances

that often arise in pro se situations." *Id*.

Rule 11 contains a safe harbor provision that must be satisfied before a party

can ask for sanctions under the rule.  *See* Fed. R. Civ. P. 11(c)(2).  This safe harbor

provision demands that a party seeking Rule 11 sanctions formally serve the opposing

party with a copy of the proposed Rule 11 motion at least twenty-one days before filing

the motion.  *Id*.  The purpose of this requirement is to afford the opposing party an

opportunity to withdraw the offending document(s).  *See* 5A WRIGHT & MILLER,

FEDERAL PRACTICE AND PROCEDURE, § 1337.2 (2010).  A party moving for sanctions

under Rule 11 must scrupulously adhere to the strictures of the safe harbor provision.

*Allison v. Parise*, 2014 WL 1763205, at *6 (M.D. Fla. Apr. 30, 2014) (noting that the

court had previously dismissed a Rule 11 motion because it failed to comply with the

safe harbor provision and stating that the court "strictly construes the procedural

requirements of Rule 11"); *Geico Gen. Ins. Co. v. Hampel*, 2012 WL 204284, at *2 (S.D.

Fla. Jan. 6, 2012) ("Courts consistently have held that 'strict compliance with Rule 11

is mandatory.'") (quoting *In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008)), *report and

recommendation adopted*, 2012 WL 204176 (S.D. Fla. Jan. 24, 2012).

   If the opposing party fails to take corrective action within the twenty-one-day

grace period, then—and only then—may the Rule 11 applicant pursue its motion with

the court. *See* Fed. R. Civ. P. 11(c)(2). Further, the applicant must file its Rule 11

motion promptly. *Peer*, 606 F.3d at 1313; *see also* Fed. R. Civ. P. 11 advisory

committee notes to 1993 amendment ("Ordinarily the motion should be served

promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed

as untimely."). In the end, the decision whether to issue Rule 11 sanctions is left to a

court's sound discretion. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir.

2003) (per curiam).

   Here, the Plaintiffs contend that the Tax Collector Defendants' renewed Rule

11 motion cannot succeed as a threshold matter because it required a fresh twenty-one-

day safe harbor period which the Tax Collector Defendants did not honor. (Doc. 88

at 4–6). This argument lacks merit. In denying the Tax Collector Defendants' initial

Rule 11 motion without prejudice due to the Plaintiffs' appeal, the Court expressly

advised the Tax Collector Defendants that they could refile their sanctions motion

once the Plaintiffs' appeal was resolved. (Doc. 75) (denying the Tax Collector

Defendants' original sanctions motion without prejudice "[g]iven the pendency of the

[Plaintiffs'] appeal" and instructing the Tax Collector Defendants that they may

"reassert[ ]" their "sanctions-related issues" upon completion of the appeal). Further,

the Tax Collector Defendants' renewed sanctions motion was identical to their
original Rule 11 motion, and the Plaintiffs were therefore already familiar with the
arguments that the renewed motion contained.  *Compare* (Doc. 63) *with* (Doc. 84); *see
also* (Doc. 89 at 4) (stating that the Tax Collector Defendants' "renewed motion for
Rule 11 sanctions [was] identical to the[ir Rule 11 sanctions] motion filed prior to the
[Plaintiffs'] appeal").  Moreover, by the time the Tax Collector Defendants were
authorized under the Court's Order to renew their sanctions motion, the Plaintiffs
could not have modified or withdrawn their amended complaint in any event.  The
Plaintiffs notably do not cite any authority for the proposition that the Tax Collector
Defendants were subject to a new twenty-one-day safe harbor period under these
particular circumstances.  In fact, the case law appears to be to the contrary.  *See Holgate
v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) (finding that a party who received twenty-
one days' notice before the filing of a Rule 11 motion, which the trial court denied
without prejudice, was not entitled to a second safe harbor provision when the Rule
11 motion was later re-filed); *Gong v. Sarnoff*, 2023 WL 5372473, at *10 (S.D.N.Y.
Aug. 22, 2023) (explaining that defendants moving for Rule 11 sanctions based on an
initial complaint "were not required to re-notice the defects in [the p]laintiff's pleading
after [the p]laintiff filed the [a]mended [c]omplaint or to give [the p]laintiff an
additional twenty-one days to withdraw or correct its allegedly sanctionable claims"

given that the defendants were not seeking sanctions based on the amended complaint).[9]

Having resolved this threshold challenge, I proceed to the issue of whether the Tax Collector Defendants are entitled to sanctions under Rule 11. The advisory committee's note to the 1993 amendment to Rule 11 furnishes helpful guidance on the matter. It indicates that in actions brought under a prevailing party fee statute like section 1988, a court should apply the same standard in assessing the propriety of Rule 11 sanctions. *See* Fed. R. Civ. P. 11, advisory committee's notes to 1993 amendment ("In cases brought under statutes providing for fees to be awarded to prevailing parties, the court should not employ cost-shifting under this rule in a manner that would be inconsistent with the standards that govern the statutory award of fees, such as stated in *Christiansburg*[.]"); *see also Dempsey v. Winters*, 2023 WL 3001165, at *1 (N.D. Fla. Apr. 19, 2023) ("The operative language of the statutes and rule differ,[[]] but if [a party] cannot recover an award of attorney's fees under [section] 1988[ ], then she cannot recover them under . . . Rule 11[.]") (internal citations and footnote omitted); *Borges v. City of W. Palm Beach*, 1994 WL 397301, at *2 (S.D. Fla. June 7, 1994) ("[T]he 'frivolousness' standard is common to both [Rule 11 and section 1988], and if [the

---

[9] The principal cases the Plaintiffs cite are *Peer* and *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342 (11th Cir. 2022). (Doc. 88 at 4–6). In *Peer*, the court upheld the denial of a sanctions motion as untimely because the movant did not bring the motion until nine months after he acquired all the pertinent information and after the district court had rejected the offensive pleading. *Peer*, 606 F.3d at 1313. And in *Huggins*, the court ruled that "if a party fulfills the safe harbor requirement by serving a Rule 11 sanctions motion at least [twenty-one] days before final judgment, then she may file that motion after the judgment is entered." 39 F.4th at 1348. The Plaintiffs fail to articulate how these decisions have any meaningful application to the factual scenario here.

defendant] were able to establish frivolousness under the [section] 1988 claim, she would also have established a sufficient predicate for the imposition of Rule 11 sanctions.") (citation omitted).

With the benefit of this guidance and in light of the above frivolity analysis concerning the Plaintiffs' arguments, I find that the Tax Collector Defendants are entitled to Rule 11 sanctions. In short, for the reasons stated previously, the Plaintiffs' claims were "objectively frivolous" from the outset and the Plaintiffs "should have been aware that they were frivolous." *Gulisano*, 34 F.4th at 942 (internal quotation marks and citation omitted).

## D.

The Plaintiffs lastly argue that the Defendants' fee and sanctions motions should be denied because they did not comply Local Rule 3.01(g)'s conferral requirement. (Doc. 87 at 3–4); (Doc. 88 at 3–4). The gist of this contention is that the Defendants failed to "effectively" confer by sending the Plaintiffs emails asking whether they opposed the Defendants' motions. *Id*. This argument fails as well.

To begin, it is undisputed that the Plaintiffs instructed the Defendants from the beginning to communicate with them only via email because Mr. Blanchard suffered from a hearing disability. (Doc. 88 at 3); (Doc. 89 at 2). In accordance with this directive, the Defendants emailed the Plaintiffs copies of their respective motions and queried whether the Plaintiffs contested them. (Doc. 88 at 4). The Plaintiffs responded to the Defendants' inquiries with a statement to the effect that they "oppose[d]" the

motions and set forth the various reasons why they did so.  (Doc. 87 at 18–19); (Doc. 88 at 18–19).

Under the specific circumstances of this case, I find that the Defendants adequately complied with Local Rule 3.01(g).  As discussed above, the Plaintiffs have stubbornly pursued their claims despite being warned by the Court that their initial complaint was frivolous and despite being told that their amended complaint was both frivolous and barred by the TIA.  And even after the Eleventh Circuit affirmed the Court's August 2024 dismissal Order, the Plaintiffs still petitioned the Eleventh Circuit for rehearing and rehearing en banc.

In sum, while it may have been preferable that the parties engage in a more robust conferral, their communications were sufficient.  And there is no indication on this record that any further discissions between the parties would conceivably have borne fruit.  Nor do the Plaintiffs contend as much.

## III.

Based upon the foregoing, I respectfully recommend:

1.    The Tax Collector Defendants' *Renewed Motion for Sanctions and Award of Attorney's Fees under Fed. R. Civ. P. 11* (Doc. 84) be granted;

2.    The Tax Collector Defendants' *Renewed Motion to Determine Entitlement to Attorney's Fees (42 U.S.C. § 1988)* (Doc. 85) be granted;

3.    The Property Appraiser Defendants' *Opposed Renewed Motion to Determine Entitlement to Attorney's Fees* (Doc. 86) be granted; and

4.     The Tax Collector Defendants' and the Property Appraiser Defendants' respective motions to determine entitlement to appellate attorneys' fees (Doc. 81) be granted.

Respectfully submitted this 18th day of January 2026.

*[signature]*

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable William F. Jung, United States District Judge
Counsel of record